Thank you, your honors, and good afternoon. I'm Eric Slepian. I am the party in interest in the matter of Robert Lane. I am going to attempt to reserve two minutes for rebuttal. This case involves a 406B motion, attorney fees for representation before the federal court. I am asking that a district court order be vacated based on two grounds. The first is that there was an error of fact, and the second is that there was an error in law. Basically, your honors, in the district court, there was a reduction of requested attorney fees, basically reducing a 25% contingency fee contract to a 10% recovery in attorney fees, 10% of the total back payment. With regard to the decision itself, basically the judge wrote that she was reducing the fees on two grounds, and that is a claim of minimal work and a claim of minimal risk of loss. I'd like to address the risk of loss issue first. As you can see in the briefing, there was tremendous risk of loss when this case was commenced in the district court. At that point in time, there were approximately five administrative denials. I had appeared with my client before two hearings before an administrative law judge. Both of those decisions ended up unfavorable. The first one was appealed to the appeals council and was sent back for further proceedings. The second one was not reviewed by the appeals council. They found that there were no errors, and that's why we had to seek our relief in federal court. Both of those decisions from administrative law judges set forth numerous grounds for finding my client not credible. They set forth numerous grounds for rejecting the opinion of the treating physicians, and ultimately the decision was vacated by the district court and remanded for further proceedings. But as I noted in that district court decision, there were many findings made against my client. In order for there to be any 406B fee recoverable, we ultimately have to get a favorable decision on this case. After the remand, there was another administrative law judge denial. The number of denials, I feel, substantiate the level of risk of loss. So, counsel, can I ask you, because, I mean, obviously, once you start talking about an error in fact, and you make a pretty good case that I assume you presented to the district court, the district court didn't find it that way, though. And the district court looked at it and said, listen, in this case, at least at the federal district court level, setting aside things that might have happened before the administrative agency, before the district court, the commissioner basically conceded error and agreed to a remand right off the bat. And so why isn't that alone enough? I mean, whether we would have decided the case differently, why isn't that enough to say that the district court didn't abuse its discretion? I mean, that's a pretty high standard to suggest that the district court's position is illogical, implausible, or without support and inferences. I mean, maybe, yes, there's evidence going both ways, as there always is on risk of analysis, but why isn't the district court's position that the concession of error by the commissioner indicated that at least for the district court proceedings, there was not much risk of error here? Your Honor, if we take a look at the district court decision itself, there's a finding that there is serious doubt of disability. There's also the district court judge affirming or at least supporting various findings of the agency. And all of those factors show how difficult Mr. Lane's claim was, as well as the substantial risk of loss. Well, then why did the commissioner concede, without even responding, concede to take the case, to remand the case? If they had such a compelling case, why did they agree to an immediate remand? I cannot tell you why the commissioner took that position, Your Honor. I do know the commissioner reviewed the decision and found that there was some error requiring remand. The commissioner did not believe that the factual evidence was sufficient enough to consent to a remand for a computation of benefit and insisted that we have a remand for further proceedings. Because it was the commissioner's position that there were issues that would support a finding of non-disability that need to be redetermined by the agency. And the district court agreed with that, right? Correct. Yeah. So, I mean, to me, the compelling issue is, I mean, you got, you were awarded $33,000 in fees, right, from the Social Security Administration for proceedings below. And that seems a different analysis. There was a lot more work done there. There was a lot more factual development. And you've laid out a really good case, why you were entitled to that amount. But as to the federal district court, I don't, I mean, what it was, how many hours did you put into the federal district court proceedings? Roughly, there were 35 hours put into the proceeding. And, Your Honor, this brings up the second error, which has to do with the legal error as well. And in particular, I would point this court to the case of Gisbrecht as well as Crawford. We note in the district court decision that there is no explanation as to why the fee was reduced to 10%. There was no factual analysis to show why not 15%, why not 20%. But isn't that the case, that's where I struggle here, is, I mean, I've read those, I mean, Gisbrecht, I don't see legal error here. Gisbrecht says you've got to start, Gisbrecht and Crawford read together suggest you have to start with the, start with the fee agreement. You agree that the district court did that here, right? The district court stated they were starting with the fee agreement. That's what they did, right? He's asked for 21%. I mean, but, but I'm only going to give 15%. I mean, would 15% have been reasonable and you wouldn't have appealed it versus 10%? So, Your Honor, you have to look at those factors that are set forth in Crawford. And that is not an analysis that was performed by the district court. There should have been analysis regarding the character of representation. Oh, I think there was an analysis. You're, no one is disputing your representation was good. No one's disputing that you didn't try and delay things. The only issue here is whether there was a disproportionate award compared to the work, to the amount of work that was done. And, and I, how did, how did the district court err from a legal perspective on that issue? So, Your Honor, if you're framing the question that the district court just looked at the amount of work that was done and then provided a, a wait for those particular hours, that's a load start. And, and, and that is where Gibrecht and Crawford say, we don't start with this load start. But he didn't, the district court didn't start with the load start and, and, and Gibrecht and Crawford are clear that the load start can be used as a check against reasonableness after you start with the contract, but I'll allow you to finish up and then reserve. Thank you. So I would point out, Your Honor, if you look at the amount, the district court ordered, it was somewhere south of $800 per hour. In Crawford, two of the three cases determined there was a higher hourly rate. There are many cases with a higher hourly rate. My client recovered over a quarter of a million dollars. There was significant and substantial benefit to him. I went to district court even after twice administrative law judges had denied this claim. I don't think many other attorneys would do that. And I think Mr. Lane would have a difficult time finding an attorney willing to do that. In this case, which is in addition to factors looked at in Crawford, my client agreed that this fee was reasonable. This is a contract between me and my client. He submitted a statement saying, I have no objection to Mr. Sleffian getting everything that he has asked for. And I see no analysis in the district court as to why we're not focusing on those factors as opposed to just a 10% total fee. I voluntarily reduced my fee by 14% before I even walked into the court and petitioned for my fee. I see my time is up. But let me ask you one quick question. It won't come out of your additional minute. If we do not affirm the ruling, are we allowed to calculate a fee or would we have to remand to the district court under the Supreme Court precedent so that it could do that? So, Your Honor, based on Crawford, I would answer that question by obviously stating that you have the authority to do that because that is what the court did in Crawford. I don't see direction in the case, Lord, advising us as to what factors to be considered to send it to district court or not to send it to district court. So you'll note in my briefing, there's not much discussion on that. I do know you have the discretion. I just don't know what factors you utilize other than whether it would be a delay for unnecessary purposes. Okay. Thanks, counsel. I'll ask Ms. Milano in her argument. If she could address that question, I asked it at some point. So you've got one minute for rebuttal when we come back and we will now turn to the argument by appellee. Good afternoon, Your Honors. May it please the court. My name is Jessica Milano. I'm here on behalf of the commissioner of Social Security. As you know, this case presents competing interests. One unusual point is that as the commissioner has no direct financial interest, I'm here before the court today in a limited role. I'm a de facto trustee and generally am serving informational purposes. On the one hand, the court looks at fees and they must be sufficient to encourage representation from the bar. And on the other hand, they come out of a disability claimant's past due benefits. And I think for this reason, the court's independent check is entitled to broad discretion. And Mr. Slepin is correct. I agree that the primacy of the contract, but again, it's the independent check to test it and make sure it's reasonable in light of the fact that someone's benefits are on the line. As far as answering your question. First answer to Judge Gould and then I have a question. Judge Gould, the court, to be clear, the commissioner does not take a position as we do not have a direct financial interest and we defer to the courts. Here, I think it probably would make sense to send back to the district court. And that's in part because Mr. Slepin's changed what he's asking. And so I think the district court should be able to consider it in the first instance. And secondarily, I think that Judge Nelson pointed out that the court had good reasoning that it supported. So perhaps the reasoning was imprecise, but I don't think that that is reason to decide in the first instance. It's very different. In that case, the district court started with an hourly rate and went from there. So this case is distinguishable. Can I ask you, though, what role does Lodestar play? I mean, because Crawford, if you read Crawford as limited as that and there's some basis to do that, it sort of just becomes this procedural hurdle. It is a distinction without a difference. And so, I mean, it's really an odd thing to say, well, look, we're going to we're going to get really hung up on where you start with the contract. You've got to look to the contract first. But everybody agrees Lodestar. I think everybody agrees that Lodestar can be a tool to determine reasonableness. And so it almost seems as if the district courts are slipping back into Lodestar anyway, because that tends to be the best way to determine whether this is reasonable. Right. That's a great question, Your Honor. I agree. It's hard to distinguish. But Gisbrecht does instruct that Lodestar can be used as an aid, as a litmus to determine reasonableness. And I would argue that our profession, that is how we're measured. Hourly rate is something that is pretty universal and easier to measure. And yes, the court acknowledged that Mr. Slepin achieved great results for his client. It just was very out of proportion to the amount of time. And for that reason, it reduced. And here, as you pointed out, is the court didn't first consider hourly rate. The court found 10 percent was reasonable. Your Honor? What's your view of the risk analysis here? I think it's, so the court says twice. In addition to saying that the requested fee is large in comparison to the amount of time counsel requested, the court does mention risk twice. One is definitely an error. Mr. Slepin admittedly did not assume risk in accepting representation. However, almost a third of counsel's time before the district court was after the commissioner offered to remand. So he certainly didn't have great risk in running up one third of the hours. So, you know, the court's second reference, I'd say, is more accurate risk assumed by counsel in the district court proceedings. There wasn't much risk in, you know, about a third of those hours. But overall, you know, I believe the court's reasoning is adequate. It really was just the windfall analysis. And what determines that it's a windfall? Is it purely hours and dollars? No, I don't think so. I apologize. $794 is not really shabby. And it's not as good as $1,700 an hour. And how do we say, well, this is a windfall, this is not? Right. And I think one of the cases that Mr. Slepin relied on in briefing was around the tune of $2,000 or more per hour. But in that case, counsel had achieved a Bennett for an immediate award. As Judge Nelson pointed out, this case went back and it was before the administrative agency and there was compensation there, too. I guess that goes to, you know, achievement of counsel before the district court. Here it was very good, but, you know, it could have been better in terms of he fought for the immediate award and didn't achieve it. Ms. Bellano, Judge Gould, if I could inject a sort of a technical question for your expertise. And I apologize for not knowing the law on this, but if we were to remand to the district court to recalculate the award based on some perceived deficiency. And what the district court reasoned, would that recalculation proceeding also be subject to more attorney's fees? In other words, would Mr. Slepin be entitled to claim fees for that proceeding and also for this appeal argument? That's a good question, Your Honor. I think that those hours could be considered and I just think it would also go to what did it achieve for the client. I mean, when we go back to looking at the factors, again, it just goes to how did this further the claimant's... Well, but that almost by definition would have nothing to do with the claimant. I mean, the claimant, I mean, it is a very odd posture to be in because there's no extra pot of money. Ironically, I mean, what about the claimant agreeing that these are not unreasonable fees? I mean, it wasn't enough in the other cases, but it is odd. I mean, it's almost assuming that the client doesn't know what's reasonable, so the court has to be, you know, careful here. Agreed. I think the court is in a difficult position. The case, the circuits that have considered it have noted that it would be almost unbelievable if a claimant didn't agree with the fees because what would they have had without their counsel's work? I don't put a lot of stock in whether or not a claimant agrees with fees. I also don't think the court should necessarily put a ton of stock in what the commissioner does or doesn't believe. I think it comes down to the court taking a look at this, and here the district court did. Ms. Milano, let me ask you the same question I asked Mr. Slepian. If the panel decided that it thought the fee was inadequate, would it have the authority, if it wanted to, and I realize Crawford's distinguishable, but would we have the authority to just set another figure ourself to bring this to a conclusion rather than remanding? I believe you would have the authority. The only wrinkle on that is Mr. Slepian's changed his request a bit, so I'm not sure how that would figure in. Okay, thank you. Unless Judge Kelly or Judge Nelson have other questions for Ms. Milano, I'm going to thank her for her argument. I'm going to ask Mr. Slepian to take his grace rebuttal period here. Thank you, Your Honor. A couple of things I want to point out. When we look at the petition that I submitted, I was not seeking to break any new ground. There is legal authority, even if we went strictly by a road star, there's legal authority for the amounts that I've claimed. The distinction on the case where it was a $2,200 effective rate, $2,200 per hour, the distinction that that was remanded for a computation apparently goes two ways. One, the court remands for a computation of benefit only when there is no serious doubt as to disability. So the facts on that case may have been much stronger and the risk of loss much less than I was faced with. The other point I'd like to make is even though the commissioner agreed I was entitled to further proceedings, the district court had the authority to deny the claim, finding any error to be harmless or finding no error at all. And I know that the district court has used that authority on other particular cases. So the position of the commission doesn't necessarily mean that I had little or no risk of loss. And when I walk into federal court, I know bottom line, I have to ultimately win this case. Otherwise, I don't get paid. And I will tell you that had Mr. Lane come to me and said, Mr. Slutkin, I don't like 25%, I only like 10%, I would not have agreed to the representation. Generally, I don't take cases on a 10% contingency fee basis. And so when we look at all of these cost factors and prior holdings in other cases, granting fees at $1,700 an hour, $22,000 an hour, my request seems to be reasonable. And again, Mr. Lane would not have received over a quarter of a million dollars. He wouldn't have received Medicare benefits. He wouldn't have received ongoing monthly benefits. And so the benefit to Mr. Lane was far greater than the benefit to myself. And so for those reasons, I would ask that you vacate the decision of the district court. Thank you, Mr. Slutkin. Thank you. I think you're more than almost two minutes over your extra one minute. So we just have to conclude. I appreciate the opportunity. I want to thank both counsel for appellant and counsel for appellee for giving us some help in deciding the decision. The Lane v. Saw case shall now be submitted and the parties will hear from us in due course.
judges: Kelly, Gould, Nelson